399 A.2d 414

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Carl GELFONT.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1978.

Decided March 2, 1979.

98

James A. Cunningham, Assistant District Attorney, Norristown, for Commonwealth, appellant.

Anthony J. Giangiulio, Norristown, for appellee.

Before PRICE, SPAETH and WATKINS, JJ.

PRICE, Judge:

■ This is an appeal from an order of the court below granting appellee's motion to suppress the physical evidence seized pursuant to a search warrant executed at the appellee's residence at an address within Montgomery County. The physical evidence involved is approximately fifteen (15) pounds of marijuana, and the appellant certifies and the court below found that the physical evidence is critical to the Commonwealth's presentation of the case. The Commonwealth is therefore clearly entitled to bring this appeal. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963).

The sole issue before us is whether or not the affidavit supporting the issuance of the search warrant provided a sufficient basis for the magistrate to have had probable cause established to justify issuance of the search warrant. We find by applying the test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and subsequent Pennsylvania authorities on the point that the court below erred in the suppression, that the order should be reversed and the case remanded for trial.

President Judge Lowe, of the Court of Common Pleas of Montgomery County, the court below, issued the order and able opinion in support of his order. The facts set forth in that opinion are as follows:

"On February 22, 1978 Montgomery County Detective Timothy Woodward sought a search warrant for the residence of defendant Carl Gelfont. The complaint for the warrant read in pertinent part:

During the last 24 hours affiant interviewed a confidential and reliable informant. The information received from the confidential and reliable informant was that during the last 48 hours, while he (the informant) was present inside the residence located at 3918 Warfield Drive, Huntingdon Valley, he (the informant) observed a large quantity of suspected marijuana. The marijuana was in the possession of a white male known to the informant as Carl . . . Affiant checked the 'Coles Directorey [sic]' and learned thru that directory that the residence at 3918 Warfield Drive, Huntington [sic] Valley is owned by a Carl Gelfont and learned that a Pennsylvania Operators License is issued to a Carl Gelfont, d. o. b. 2/9/42, 3918 Warfield Drive, Huntington [sic] Valley. Affiant believes the informant to be reliable for the following reasons: The informant has never been arrested or a suspect in a crime. The informant has been gainfully employed for the majority of his adult life. The informant is also a registered voter in Montgomery County . . .

After a determination of probable cause, District Justice Everett P. Arnold issued the warrant.

Detective Woodward proceeded to the defendant's residence, executed the warrant, seized contraband, and arrested the defendant for violations of the Controlled Substance, Drug, Device and Cosmetic Act. Act of April 14, 1972, P.L. 233, 35 P.S. 780–113(a)(16), (30)."

The key words to the decision of the court below were the words "suspected marijuana" in the sentence of the affidavit ". . . while he (the informant) was present inside the residence located at 3918 Warfield Drive, Huntingdon Valley, he (the informant) observed a large quantity of *suspected marijuana*." (emphasis supplied).

Speaking to this point and discussing *Aguilar v. Texas, supra*, the opinion of the court below explains:

"Each prong of the test must be analyzed separately. The first requirement is an explanation of the underlying circumstances which caused the informant to believe that fruits of a crime would be found. This warrant merely states that the informant 'observed a large quantity of suspected marijuana.' (emphasis added). The affidavit stated that the suspected marijuana was in the possession of a certain individual named Carl at a designated location. This portion of the affidavit lacks the requisite underlying 'facts or circumstances' which gave rise to the informant's conclusions. There is nothing in the affidavit to indicate that the informant had any expertise in marijuana or that he could distinguish marijuana from other vegetable substances of similar appearance and characteristics. Unquestionably, before a lay informant's opinion can support the issuance of a search warrant, it must be demonstrated he has had some prior elementary experience with the subject matter of the opinion. The Supreme Court of the United States forbids issuance of a warrant on mere affirmance or belief. In *Nathanson v. United States*, 290 U.S. 41 [54 S.Ct. 11, 78 L.Ed. 159] (1933), a warrant was issued upon the sworn allegation that the affiant 'has cause to suspect and does believe' that certain merchandise was in a specified location. The Court stated:

> Under the Fourth Amendment an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough.

*Id.* 47 [54 S.Ct. 11]. See also *United States v. Harris*, 403 U.S. 573 [91 S.Ct. 2075, 29 L.Ed.2d 723] (1971). The informant merely suspected that marijuana was present at defendant's residence. Mere affirmance is insufficient. There is no allegation that the informant, a reputable, law-abiding citizen, had any knowledge of marijuana. It cannot be assumed that marijuana is such a common, every day substance that it is readily and universally recognizable. Expert witnesses are of-

ten called upon to identify marijuana. *United States vs. Moore*, 446 F.2d 448 (3rd Cir. 1971), *cert. denied*, 406 U.S. 909, [92 S.Ct. 1617, 31 L.Ed.2d 820] (1971). The meager, unconfirmed, and unsubstantiated allegations identifying the *suspected* contraband as marijuana are insufficient to satisfy the first prong essential to establishing probable cause."

 We believe this analysis to be in error. As Justice Frankfurter pointed out in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), in examining an affidavit the magistrate issuing the warrant

"need not have been convinced of the presence of narcotics [at the place to be searched. Rather there need only be a] *substantial basis* for him to conclude that narcotics were probably present." *Id.* at 271, 80 S.Ct. at 736 (emphasis supplied).

Additional valuable instruction is gained on the standard of review in *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), where the Court stated:

"[W]hen a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 109, 85 S.Ct. at 746. (citation omitted).

Indeed, this court has often used the above language in upholding such warrants, most recently in *Commonwealth v. Forster*, 253 Pa.Super. 433, 385 A.2d 416 (1978) (*Allocatur denied* June 21, 1978). In *Forster*, the drug involved was identified as T.H.C. *only* through the use of the letters T.H.C. in a conversation overheard by the informant. The substance was never seen and therefore was further removed from specific identification than the physical evidence here involved.

■ In the instant case, the court below has applied too strict a standard. The information that a confidential reliable informant provides law enforcement authorities in order for them to procure a search warrant has never been held to be a standard of proof beyond a reasonable doubt. This court has repeatedly held that the correct test is by evidence less than would justify conviction. The use of the word "suspected" must, of necessity, at least be implied in all search warrants. Even the most experienced of law enforcement officials can only *truly* apply a drug name to a substance after standard chemical tests are performed, most often requiring the use of highly trained and specialized experts to identify *truly* the drug. Indeed, the court below recognized that distinction in its opinion.

Further, in *Commonwealth v. Banahasky*, 250 Pa.Super. 495, 378 A.2d 1257 (1977), Judge Spaeth, speaking for the majority, accepted the words "suspected marijuana" as establishing the fact that some drugs were found on an individual's person.[1] That opinion, while accepting "suspected marijuana," went on to reverse on other grounds, a conclusion which led the writer of this opinion to dissent. But on the point here under discussion there was no division.

■ Appellee also argues the suppression order should be affirmed because the court below erred in its interpretation of the second prong of the *Aguilar, supra*, requirement. On that point, the court below's opinion is as follows:

"The leading case analyzing the second requirement of the *Aguilar* test is *United States vs. Harris, supra*. The courts of Pennsylvania have reviewed the requisite standards in determining whether or not there is a substantial basis for crediting hearsay:

1) Did the informant give prior reliable information?
2) Was the informant's story corroborated by any other source?

---

1. The dissent now justifies that reliance because of the fact that the informant was a chief of police. This is an example of fallacy known as *petitio principii*. It is not a fact which establishes the ability to translate the words "suspected marijuana" into "truly marijuana."

3) Were the informant's statements a declaration against interest?

4) Does the defendant's reputation support the informant's tip?

*Commonwealth vs. Ambers,* 225 Pa.Superior Ct. 381 [310 A.2d 347] (1973); *Commonwealth vs. Reisinger, supra* [252 Pa.Super. 1, 380 A.2d 1250]. None of the aforementioned factors is present in the instant case. However, these factors were not 'intended by the *Harris* court to be the only factors which could conceivably provide a basis for crediting the hearsay.[2] To apply this "checklist" in a mechanical manner would deprive a reviewing court of the opportunity to use its "common use" as urged the Court in *United States vs. Ventresca* [380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)] . . .' *Commonwealth vs. Reisinger, supra* [252 Pa.Super. 1], 380 A.2d 1250, 1253.

This Court concludes that there is sufficient evidence to determine that the second requirement of *Aguilar* was met. The informant was reliable because he had never been arrested or a suspect in a crime, is gainfully employed, and is a registered elector in Montgomery County."

We agree.

**2.** Footnote 1 of the quoted portion of the court below's opinion is as follows:

"Justice Harlan's dissent in *Harris vs. United States* [*United States v. Harris*], 403 U.S. 573 [91 S.Ct. 2075, 29 L.Ed. 723] (1971), is instructive on the issue of credibility. 'I think there is much truth in the government's supporting assertion that the ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis . . .' *Id.,* 599 [91 S.Ct. 2075]. Justice Harlan continued, 'without violating the confidence of his source, the agent surely could describe for the magistrate such things as the informer's general background, employment, personal attributes that enable him to observe and relate accurately, position in the community, reputation with others, personal connection with the suspect, any circumstances which suggest the probable absence of any motivation to falsify, the apparent motivation for supplying the information, the presence or absence of a criminal record or association with known criminals, and the like.' *Id.,* 600 [91 S.Ct. 2075]."

104

The suppression order is reversed and the case remanded for trial.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

On February 22, 1978, the Commonwealth obtained and executed a warrant to search appellant's residence. Marijuana was found and appellee was arrested and indicted. Following a suppression hearing on June 6, 1978, however, all evidence obtained as a result of the search was suppressed by the lower court on the ground that the search warrant was issued without probable cause. The Commonwealth appeals from this ruling.[1]

The warrant was issued upon the following affidavit of probable cause:

During the last 24 hours affiant interviewed a confidential and reliable informant. The information received from the confidential and reliable informant was that during the last 48 hours, while he (the informant) was present inside the residence located at 3918 Warfield Drive, Huntingdon Valley, he (the informant) observed a large quantity of suspected Marijuana. The Marijuana was in the possession of white male known to the informant as Carl. Carl is described by the informant being 6'2 and weighting approximately 300 pounds. Affiant checked the "Coles Directorey" and learned thru that directory that the residence at 3918 Warfield Drive, Huntingdon Valley is owned by a Carl Gelfont. Affiant also checked the Pennsylvania Bureau of Motor Vehicles and learned that a Pennsylvania Operators License is issued to a Carl Gelfont, d. o. b. 2/9/42, 3918 Warfield Drive, Huntingdon Valley. Affiant believes the informant to be reliable for the following reasons: The informant has never been

---

1. As the majority notes, because the record shows that the suppressed evidence is critical to the prosecution of this case, the Commonwealth is entitled to bring its appeal. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304, *cert. denied* 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963); *Commonwealth v. Reisinger*, 252 Pa.Super. 1, 380 A.2d 1250 (1977).

arrested or a suspect in a crime. The informant has been gainfully employed for the majority of his adult life. The informant is also a registered voter in Montgomery County. Finally, Affiant believes the informant to be reliable due to the fact that the information given to Affiant by the informant relative to the owner of the residence located at 3918 Warfield Drive Huntingdon Valley, and a description of the residence thereof, has been substantiated by the Cole's Directory, Pennsylvania Bureau of Motor Vehicles and Lower Moreland Township Tax Records. As a result of the above information given to Affiant by the confidential and reliable informant, Affiant believes the confidential and reliable informant to be of sound reasoning and not prone to rash judgements.

In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court considered the constitutionality of a search warrant based on hearsay information given by an unidentified informant. The Court held that such a warrant is lawful only when the issuing magistrate has been "informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.'" *Id.* at 114–15, 84 S.Ct. at 1514. *See also United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We have interpreted this holding to mean that in order for such a warrant to be valid, "the issuing authority must by reference to the information in the affidavit be able to answer two questions: (1) Do I have enough information to warrant the belief that the informant *could* know what the officer says she told him she knew? And (2) If I do have enough such information, do I also have enough information to warrant the belief that [the informant] *did* know it?" *Commonwealth v. Purcell*, 251 Pa.Super. 545, 380 A.2d 914, 917 (1977) (plurality opinion) (original emphasis). *See also Commonwealth v. Davis*, 466

Pa. 102, 351 A.2d 642 (1976); *Commonwealth v. Kline*, 234
Pa.Super. 12, 335 A.2d 361 (1975); *Commonwealth v. Archer*,
238 Pa.Super. 103, 352 A.2d 483 (1975).

Here the issuing magistrate had sufficient information to
conclude that if appellee possessed marijuana, the informant
could have observed it when he was at appellee's residence.
The magistrate, however, did not have sufficient informa-
tion to conclude that appellant's assertion was reliable that
the substance he saw at appellant's residence was marijua-
na.

The requirement that an issuing magistrate be informed
of the underlying circumstances from which the affiant for
a search warrant concluded that the information he received
from his informant is reliable is satisfied only if there is
reason for the issuing magistrate "to believe both that the
informer is a truthful person generally and that he has
based his particular conclusions in the matter at hand on
reliable data . . . ." *United States v. Harris, supra* 403
U.S. at 588, 91 S.Ct. at 2084 (Harlan, J., dissenting), *quoted
in Commonwealth v. Slater*, 242 Pa.Super. 255, 257–58, 363
A.2d 1257, 1258 (1976). *See also Commonwealth v. Emerich*,
225 Pa.Super. 163, 310 A.2d 390 (1973) (no probable cause
despite tips from respected and generally credible members
of the community because the dependability of their infor-
mation was not shown). The affiant here endeavored to
establish the reliability of his informant by asserting that he
was a registered voter, was employed, and had no criminal
record. Even if we assume that these facts are sufficient to
show that the informant was generally truthful,[2] they do not
show that his observations provided reliable data from which
he could have reasonably concluded that appellant possessed
marijuana. As the lower court pointed out, the affidavit

2. Whether the affidavit was sufficient to show the informant's general
truthfulness is by no means certain. *See generally In re Burton*, 259
Pa.Super. 20, 393 A.2d 696 (1978) (no probable cause where only
reasons to believe informant were that informant had "nothing to
gain by informing" and came from a family of "noted upstanding
citizens of the community"); *Commonwealth v. Slater, supra* (no
probable cause where unidentified informant swore before affiant
that the information he was giving was truthful).

presented to the magistrate did not state that the informant possessed any knowledge of marijuana that would enable him to distinguish marijuana from other vegetable substances of similar appearance and characteristics. Slip opinion at 3–4. In past cases, we have upheld a warrant where the accompanying affidavit indicated that the informant was familiar with narcotics or contained other facts to show that the observed substances were probably contraband. *See Commonwealth v. Cosby*, 234 Pa.Super. 1, 335 A.2d 531 (1975) (probable cause present where named informant with no ulterior motive entered defendant's apartment and saw packet with white powder, powder residue, and tube on album cover); *Commonwealth v. DiSantis*, 222 Pa.Super. 387, 294 A.2d 789 (1972) (probable cause present where undercover narcotics agent saw marijuana and marijuana cigarette on defendant's premises); *Commonwealth v. Somershoe*, 215 Pa.Super. 246, 257 A.2d 341 (1969) (probable cause where informant with record of narcotics involvement saw marijuana in defendant's house and defendant had been arrested a month before on another narcotics charge); *see also Rutherford v. Cupp*, 508 F.2d 122 (9th Cir. 1974), *cert. denied*, 421 U.S. 933, 95 S.Ct. 1663, 44 L.Ed.2d 92 (1975) (probable cause where neighbor brought sample of plant growing in defendant's yard to police and sample proved to be marijuana). However, until today, we had yet to take judicial notice of the (unproved) fact that the use of marijuana has become so universal that it is readily recognizable by law-abiding citizens. *See Commonwealth v. Purcell, supra* 251 Pa.Super. at 550–552, 380 A.2d at 917 (no probable cause where facts recited in affidavit did not warrant belief that informant knew what a marijuana plant looked like). The majority takes such notice, and in doing so, I submit, it errs. A judicially noticed fact must be one not subject to reasonable dispute. *See* Fed.R.Evid. 201(b) and Advisory Committee's comment. It is true that the use of marijuana has risen dramatically over the past decade. *See* Glaser, *Interlocking Dualities in Drug Use, Drug Control, and Crime*, in DRUGS AND THE CRIMINAL JUSTICE SYS-

TEM 45 (Inciardi and Chambers ed. 1974) (42% of American students in 1970 had used marijuana and more recent surveys indicate a higher percentage of users). Still, 1971 surveys indicated that only 13% of all white collar and only 15% of all blue collar workers had some marijuana experience. *Id.* Given these statistics, whether the average law-abiding citizen is able to recognize marijuana is at least subject to reasonable dispute since the ability to recognize it is not innate but is attained only after training or illicit familiarity.[3]

I am aware that in determining the sufficiency of an affidavit of probable cause for a search warrant

> only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142, 147 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62, 70 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, 688 (1965); and that their determination of probable cause should be paid great deference by reviewing courts, *Jones v. United States*, 362 U.S. 257, 270–271, 80 S.Ct. 725, 735–736, 4 L.Ed.2d 697, 707, 708, 78 A.L.R.2d 233 (1960). *Spinelli v. United States, supra* 393 U.S. at 419, 89 S.Ct. at 590, 591.

Still, the fact remains that the affidavit here set forth no facts to establish the reasonableness of the informant's

---

**3.** One further fact may be noted. As appears in the affidavit quoted *supra*, the affiant also said that he believed the informant to be reliable because the informant's assertion that appellee lived at 3918 Warfield Drive had been verified. This verification, however, could not establish the reliability of the informant's assertion that appellant possessed marijuana at the residence. *See generally Commonwealth v. Devine*, 233 Pa.Super. 99, 334 A.2d 725 (1975).

suspicion that appellant possessed marijuana.[4] No assertion was made that the informant had ever seen marijuana before. Nor did the magistrate know the age and background of the informant. He knew that he was not a student, for the affidavit states that he "has been gainfully employed for the majority of his adult life." He may have been a recent graduate, but the statistical probability is that he is a member of the larger class of middle-aged and senior citizens. Nor did the affidavit assert that appellee told the informant that the substance he observed was marijuana, or that the informant saw appellee using or manufacturing the substance, or that appellee had a prior record involving narcotics violations.

In most cases, the reliability of an informant is satisfied by police reliance on information that has in the past led to arrests and convictions. Of course, there is always a first time for every informant, as the present case demonstrates. Our cases hold that the police should not discourage law-abiding citizens from coming forward with information of criminal conduct, but neither should the police be exempted from testing the reliability of the information they receive merely to accommodate their informants. *Commonwealth*

4. The majority's emphasis on the particular words used in the affidavit misconstrues this opinion and, I believe, the opinion of the lower court. The search warrant lacked probable cause not because the words "suspected marijuana" were used in the affidavit, but because of the absence of any facts from which the magistrate could have concluded that the informant had a reasonable basis for claiming that the substance he saw was marijuana. *Commonwealth v. Banahasky*, 250 Pa.Super. 495, 378 A.2d 1257 (1977), which is cited by the majority, is not only entirely consistent with this dissent, but proves the point I make. In *Banahasky*, the informant was a chief of police. From this fact the magistrate who issued the search warrant could have reasonably concluded that the informant was familiar with narcotics and that his suspicion was probably accurate that the substance he found on the suspect was marijuana.

Also, I note that although both the majority and the lower court have treated the issue of the informant's ability to recognize marijuana as involving the first prong of the test established in *Aguilar v. Texas* (*i. e.*, as involving the circumstances from which the informant concluded that narcotics were where he claimed they were), I have treated the issue as involving the second prong (*i. e.*, as involving reliability), believing that by doing so the questions presented will be focused more clearly.

110

*v. Slater, supra* 242 Pa.Super at 258, 363 A.2d at 1258. To hold otherwise, in order to validate warrants like the one involved here, would be to infringe upon the public's legitimate expectation that a person will not be subject to search and seizure whenever another has lifted an accusatory finger, absent a preliminary testing of the rationality of the accusation.

I would affirm.