J-E01004-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRUCE M. REESE, | : | |
| | : | |
| Appellant | : | No. 52 EDA 2013 |

Appeal from the Judgment of Sentence November 20, 2012,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0013539-2011

BEFORE:  BOWES, DONOHUE, SHOGAN, LAZARUS, MUNDY, OLSON, WECHT,
STABILE and JENKINS, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED JUNE 23, 2015**

Bruce M. Reese ("Reese") appeals from the November 20, 2012 judgment of sentence entered by the Philadelphia County Court of Common Pleas following his convictions of possessing an instrument of crime, criminal conspiracy, and four counts of robbery.[1]  Upon review, we conclude that the trial court properly denied Reese's motion to suppress and that Reese's sufficiency claim does not entitle him to relief.  Because we conclude that Reese's sentence is illegal, however, we vacate the judgment of sentence and remand for resentencing.

In the early morning hours of November 12, 2011, Reese and an unidentified man robbed four men at gunpoint near the corner of 57th Street and Belmar Terrace in Philadelphia outside of the home of Keith Nazario

---

[1]  18 Pa.C.S.A. §§ 907(a), 903(c), 3701(a)(1)(ii).

("Nazario"), one of the victims. Reese was holding the gun, which the victims described as black. One of the victims, Darren Harrison ("Harrison"), had "seen [Reese] around the area," but did not know him. N.T., 10/2/12, at 52. As Reese was leaving the scene, Nazario recognized him as the cousin of one of Nazario's friends, Kyle Bentley ("Bentley"), and called after Reese. Harrison indicated that he knew Bentley as well. Upon hearing this, Reese acknowledged that he was Bentley's cousin and attempted to get the victims' money back from his coconspirator. The coconspirator refused to return the money. Reese then provided his phone number to the victims and assured them he would return their money the following day. He then ran to catch up with his coconspirator. None of the victims wrote down the phone number.

Victim Bryan Shoecraft ("Shoecraft") called the police that night to report the robbery; Harrison telephoned the police the following day. Harrison brought the fourth victim, Ian White ("White"), to the police station with him, and both readily identified Reese in a photo array as one of the perpetrators of the robbery. Shoecraft likewise immediately identified Reese in the photo array when police presented it to him the following day.[2]

Police requested and obtained a warrant for firearms and ballistic evidence, Shoecraft's debit card, proof of residence, and any other items of

---

[2] Nazario did not provide a statement to the police and he did not testify at trial.

evidentiary value at what police believed to be Reese's address – 413 North Edgewood Street in West Philadelphia. Police executed the warrant on November 14, 2011 at 7:05 a.m. and located Reese inside the residence, lying on a sofa. Police retrieved a black handgun[3] from the cushion underneath where Reese was laying and proof of residence inside the house, not on Reese's person.

On February 1, 2012, Reese filed a pretrial motion seeking, inter alia, suppression of the evidence found during the execution of the search warrant. At a hearing on the motion on October 2, 2012, Reese presented two arguments in support of suppression: (1) the affidavit of probable cause failed to provide a sufficient basis to believe the items sought would be found at Reese's residence, and (2) the police misrepresented to the magistrate that the location to be searched was Reese's last known address. The trial court denied the motion. On October 5, 2012, a jury convicted Reese of the aforementioned crimes. The trial court sentenced him on November 20, 2012 to an aggregate term of fifteen to thirty years of incarceration.

Reese did not file any post-sentence motions, but filed a timely notice of appeal on December 10, 2012. He complied with the trial court's order for the filing of a concise statement of errors complained of on appeal

---

[3] Police subsequently learned that the gun recovered during the search was not real.

pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) ("1925(b)

statement"). Thereafter, the trial court issued a responsive opinion pursuant

to Pennsylvania Rule of Appellate Procedure 1925(a).

On appeal before a three-judge panel of this Court, Reese raised the

following issues for our review:

> 1. Did the trial court err by denying [Reese]'s pre-trial
>    motion to supress [sic] evidence based on a lack of
>    probable cause where the affidavit of probable cause
>    for the issuance of the warrant did not provide
>    sufficient information for the issuing court to make a
>    determination of probable cause?
>
> 2. Was the evidence insuficient [sic] to establish a
>    reliable identification of [Reese] as being involved in
>    the commission of the crimes he was convicted of
>    committing?

Reese's Brief at 2. On August 9, 2014, the panel vacated Reese's judgment

of sentence and remanded the case for a new trial. The panel unanimously

agreed that there was sufficient evidence to support Reese's convictions.

The majority determined, however, that the trial court erred by denying

Reese's motion to suppress:

> [T]here are no factual averments in the affidavit [of
> probable cause] that establish any "nexus" between
> Reese's home and the instant crime. Within its four
> corners, the affidavit establishes only probable cause
> to believe that Reese committed the robbery and
> lived at the subject residence.[] … "[T]he lack of a
> substantial nexus between the street crime and the
> premises to be searched renders the warrant facially
> invalid." [**Commonwealth v.**] **Way**, 492 A.2d
> [1151,] 1154 [(Pa. Super. 1985)]; **see**

> [**Commonwealth v.**] **Kline**, 335 A.2d [361,] 364
> [(Pa. Super. 1975)].

**Commonwealth v. Reese**, 52 EDA 2013, 18-19 (Pa. Super. Aug. 6, 2014) (unpublished memorandum). The dissent disagreed with the decision to grant Reese a new trial. First, the dissent observed that Reese's sole argument in support of his suppression claim was that "there was insufficient evidence to show that [he] resided at the residence for which the [search] warrant was issued because the magistrate was not informed, and the affirming detective did not so inform him, that [Reese] had a more recent address of record." **Id.** at Diss. 1 (quoting Reese's Brief at 9-10). As Reese abandoned any other argument relating to the denial of suppression, the dissent concluded that it was not permissible to reverse the trial court's decision on that basis. Furthermore, even if Reese had presented this argument on appeal, the dissent disagreed that it entitled him to relief pursuant to this Court's holding in **Commonwealth v. Hutchinson**, 434 A.2d 720 (Pa. Super. 1981).

On August 8, 2014, the trial court filed a request for publication. On August 14, 2014, the Commonwealth filed an application for reconsideration or reargument en banc, based upon "the majority's sua sponte grant of relief on a theory that [Reese] abandoned on appeal and that contradicts this Court's binding precedents." Application for Reconsideration or Reargument En Banc, 8/14/14, at 7. On September 5, 2014, the panel denied the trial

court's request for publication. On October 3, 2014, the full court granted the Commonwealth's request for reargument en banc. In granting the request we ordered that Reese file his original brief with a supplemental brief, or a substituted brief, addressing the following questions: "(1) whether the affidavit of probable cause properly established that evidence of the robbery would be found in [Reese]'s home; and (2) whether that claim was and is properly preserved for review by this Court." Order, 10/3/14. Reese complied by filing his original brief along with a supplemental brief addressing the requested issues. The Commonwealth timely filed its original responsive brief as well as a responsive supplemental brief.

We begin by addressing whether Reese preserved the issue concerning the absence of probable cause that the evidence sought would be found in Reese's home. Reese contends he properly preserved the issue for appellate review by including it in his suppression motion and his 1925(b) statement. Reese's Supplemental Brief at 4-5. What Reese ignores, however, and our review of his original brief confirms, is that he failed to include any argument in his appellate brief in support of this claim.

Generally speaking, there are several layers of preservation required for an issue in a criminal case to be appropriately subject to appellate review. The issue must be raised before the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). If the trial court issues an order

requiring the filing of a 1925(b) statement, any issue to be raised on appeal must be specifically included therein. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); **Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011) ("A [1925(b)] statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [1925(b)] statement at all."). The issue must also be included in the statement of questions involved section of the appellate brief. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Lastly, for an issue to be reviewable on appeal, the appellant must include a properly developed argument in support of the issue in the argument section of his or her appellate brief. **See Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); **Bolick v. Commonwealth**, 69 A.3d 1267, 1269 (Pa. Super. 2013) (finding an issue raised on appeal waived because the appellant failed to present any argument), *appeal denied*, 84 A.3d 1061 (Pa. 2014); *see also* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in

distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); Pa.R.A.P. 2101 (appellate briefs must conform to the Rules of Appellate Procedure; failure to do so may result in suppression of the brief or the appeal being dismissed or quashed).

Both the trial court and the Commonwealth contend that Reese waived the issue by failing to specifically include it in his 1925(b) statement. **See** Trial Court Opinion, 7/31/13, at 3-5 (asserting that Reese's allegation of error regarding suppression was "vague in that it fails to specify what information was lacking rendering the search warrant invalid," and thus waived); Commonwealth's Supplemental Brief at 8-9 (same). In his 1925(b) statement, Reese states that the trial court erred by failing to grant his suppression motion as "the affidavit of probable cause for the issuance of the warrant did not provide sufficient information for the issuing court to make a determination of probable cause[.]" 1925(b) Statement, 5/14/13, ¶ 1.

We agree that the issue as framed is vague and is therefore waived. **See Hansley**, 24 A.3d at 415. There are numerous bases upon which a defendant can challenge a finding of probable cause for the issuance of a warrant, two of which Reese raised before the trial court at the suppression hearing. Reese failed to provide any indication of what "information" was lacking such that the affidavit did not establish probable cause to search.

That the trial court addressed the argument Reese ultimately made on appeal does not negate a finding of waiver. **Commonwealth v. Heggins**, 809 A.2d 908, 911 (2002) ("Even if the trial court correctly guesses the issues Appellant raises on appeal and writes an opinion pursuant to that supposition, the issue is still waived."), *appeal denied*, 827 A.2d 430 (Pa. 2003).

Furthermore, our review of Reese's initial brief filed in this Court reveals that he also waived the issue by failing to include any argument in support of the question of whether the affidavit of probable cause sufficiently established that evidence of the robbery would be located in Reese's home. Rather, his argument regarding the absence of probable cause to support the issuance of the warrant was limited to the affiant's failure to inform the magistrate that "[Reese] had a more recent address of record" and as a result, "the affidavit of probable cause for the issuance of a warrant for the search of the Edgewood residence contained misstatements of fact that were both deliberate and material for the determination of probable cause." Reese's Brief at 9-12. Although Reese raised before the trial court the argument as to whether the police established that the contraband would be found in his home, he abandoned this alternative argument before this Court by failing to include any argument in support of it in his appellate brief, resulting in its waiver on appeal. **See Johnson**, 985 A.2d at 924; **Bolick**, 69 A.3d at 1269; Pa.R.A.P. 2119(a); Pa.R.A.P. 2101.

- 9 -

Even if not waived, we would find no error in the trial court's denial of suppression on this basis. We review the trial court's denial of a motion to suppress to determine whether the record supports the trial court's factual findings and whether it reached its legal conclusions in error. ***Commonwealth v. Enick***, 70 A.3d 843, 845 (Pa. Super. 2013), *appeal denied*, 85 A.3d 482 (Pa. 2014). "If the record supports the trial court's findings of fact, we will reverse only if the trial court's legal conclusions are incorrect." ***Id.*** (citation omitted).

The issuance of a constitutionally valid search warrant requires that police provide the issuing authority with sufficient information to persuade a reasonable person that there is probable cause to conduct a search based upon information that is viewed in a common sense manner. ***Commonwealth v. Housman***, 986 A.2d 822, 843 (Pa. 2009). The issuing authority must determine whether, given the totality of the circumstances presented, there is a fair probability that evidence of a crime or contraband will be found in a particular location. ***Id.*** However, "probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1049-50 (Pa. 2012) (citing ***Commonwealth v. Heyward***, 375 A.2d 191, 192 (Pa. Super. 1977); ***Commonwealth v. Kline***, 335 A.2d 361, 364 (Pa. Super. 1975)). There must be a nexus between the suspect's home and the criminal activity or contraband sought in order to

permit the search thereof. *Id.* The task of the reviewing court is to ensure that the issuing authority had a substantial basis to conclude that probable cause existed. *Housman*, 986 A.2d at 843.

In finding that the warrant sufficiently established that the contraband in question would be located in Reese's home, the trial court found our decision in *Commonwealth v. Hutchinson* controlling. Trial Court Opinion, 7/31/13, at 13-14. In *Hutchinson*, at approximately 1:30 p.m., Hutchinson committed a gunpoint robbery of four people at a medical center. *Hutchinson*, 434 A.2d at 742. He stole credit cards, several carwash slips and $800 in cash. He was wearing a blue checked shirt at the time of the robbery. At approximately 6:00 p.m. that same day, two of the victims identified Hutchinson in a photograph as the perpetrator. Police sought and were granted a search warrant for Hutchinson's home. Upon executing the warrant, police recovered, inter alia, "a blue checked shirt matching that worn by the perpetrator and a .22 caliber gas pellet gun." *Id.*

On appeal, Hutchinson challenged, in relevant part, "that the shirt and gun were inadmissible because the search warrant affidavit failed to aver that evidence could be found in his home and therefore did not establish probable cause to justify the search." *Id.* at 742-43. This Court disagreed, stating:

> In *United States v. Ventresca*, 380 U.S. 102, 108, [] (1965), the United States Supreme Court held that [] applications [for search warrants] should

be read in a "commonsense and reasonable fashion" rather than with "(a) grudging and negative attitude ...." We agree with the lower court that the facts contained in the present affidavit formed a sufficient basis for the issuing authority to conclude that evidence from the robbery would be found in appellant's home. The affidavit stated that appellant had been positively identified by two of the victims. *See Commonwealth v. Garnett*, [] 326 A.2d 335, 337 ([Pa.] 1974); *Commonwealth v. Mamon*, [] 297 A.2d 471, 476 ([Pa.] 1972). Moreover, the items seized, a shirt and a gun, were each of a type reasonably likely to be found in the perpetrator's home, especially given the short period of time between the commission of the crimes and the application for the search warrant. In similar circumstances, courts have held it reasonable for an issuing authority to conclude that evidence would be found in the homes of suspects. *See United States v. Richard*, 535 F.2d 246 (3d Cir. 1976) (evidence seized pursuant to a search warrant admissible because the issuing magistrate could reasonably infer that evidence would be found at defendant's home from facts that he had been identified as the suspect, the premises to be searched were his home, the affidavit had been made shortly after commission of the crime, and likelihood that he would discard his clothing at home); *United States v. Lucarz*, 430 F.2d 1051 (9th Cir. 1970) (reasonable to infer that suspect would hide stolen mail in his home from the value of the mail and his opportunity to conceal it). *See also United States v. Picariello*, 568 F.2d 222 (1st Cir. 1978) (magistrate may infer presence of evidence at home of suspect from type of crime committed, nature of evidence sought, and opportunity for concealment); *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976) (same). *Cf. United States v. Charest*, 602 F.2d 1015 (1st Cir. 1979) (unreasonable to infer that murder weapon would be found in suspect's home eighteen days after crime); *Commonwealth v. Heyward*, [] 375 A.2d 191 ([Pa. Super.] 1977) (unreasonable to infer that stolen automobile title certificates would be

> located in suspect's home more than two years after theft). Consequently, the lower court properly concluded that the search warrant was supported by probable cause and that the shirt and gun were admissible.

*Hutchinson*, 434 A.2d at 743.

In his supplemental brief, Reese attempts to differentiate this case from *Hutchinson* based upon the length of time between the robbery and the application for the search warrant and the fact that the victims did not uniformly identify what Reese was wearing at the time of the robbery. Reese's Supplemental Brief at 6-7. We have thoroughly reviewed *Hutchinson*, however, and have found nothing that indicates when the police obtained and executed the search warrant for Hutchinson's home in that case. As stated above, the *Hutchinson* Court simply stated that there was a "short period of time between the commission of the crimes and the application for the search warrant," without specifying precisely when the police obtained the search warrant for Hutchinson's home. *Hutchinson*, 434 A.2d at 743. In the case at bar, the police obtained the prosecutor's approval to apply for the warrant at 2:55 a.m. on November 14, 2011 and executed it at 7:05 a.m. that same day. Search Warrant, 11/14/11. This was only two days after the robbery occurred. Pursuant to *Hutchinson* and the case law upon which it relied, we conclude that, as in *Hutchinson*, the police obtained and executed the search warrant in question within a short period of time of the robbery.

- 13 -

Furthermore, the fact that the victims in the case at bar did not uniformly identify what Reese was wearing at the time of the robbery is inconsequential.[4] The police did not seek to recover any specific article of clothing in the search warrant. This argument bears no relation to the holding in **Hutchinson**, and thus does not entitle Reese to relief.

The affidavit of probable cause sets forth the allegations related to the robbery and states that three of the victims readily identified Reese as the gunman, one of whom was previously familiar with Reese. Continuation of Probable Cause for Search Warrant # 161856, 11/14/11, at 1. As discussed in greater detail infra, the police had probable cause to believe that Reese resided at 413 North Edgewood Street and included sufficient information in the affidavit supporting such a finding. **Id.** Further, in the affidavit, police requested permission to search for and seize the following items from 413 North Edgewood Street: "firearms or ballistic evidence, [Shoecraft's] Wells Fargo debit card, proof of residence and any other item of evidentiary value." Continuation of Probable Cause for Search Warrant # 161856, 11/14/11, at 1. Given the nature of these specified items, they would commonly be found in a person's home. **See Hutchinson**, 434 A.2d at 743. The affidavit of probable caused contained sufficient facts to permit the

---

[4] The record reflects that Shoecraft told police that Reese was wearing a green vest at the time of the robbery; Harrison stated Reese was wearing a "black hoody"; and White described Reese as wearing a "white dress thing over his clothing." Commonwealth's Exhibits C4, C6, C8.

magistrate to find there was a fair probability that evidence related to the robberies would be found at the North Edgewood Street address. **Housman**, 986 A.2d at 843; **Wallace**, 42 A.3d at 1050. As such, the trial court did not err by denying suppression on this basis.

We now turn to the suppression issue Reese originally raised and adequately preserved for our review. Reese asserts that the trial court erred by denying suppression, as there was "insufficient evidence to show probable cause that [Reese] resided at the residence for which the warrant was issued" because of the affiant's failure to inform the magistrate that Reese "had a more recent address of record." Reese's Brief at 9-10. Reese contends that this constituted a "deliberate and material" misstatement of fact that was necessary for the determination of probable cause. *Id.* at 10; **see Commonwealth v. Jones**, 942 A.2d 903, 909 (Pa. Super. 2008) ("[I]f a search warrant is based on an affidavit containing deliberate or knowing misstatements of material fact, the search warrant is invalid.") (citation omitted), *appeal denied*, 956 A.2d 433 (Pa. 2008).

The trial court found that this claim did not warrant suppression. The trial court agreed that "[t]he address of the premises to be searched is certainly material to the affidavit of probable cause," but found "that the affiant did not misstate why he felt [Reese] resided at the address to be searched." Trial Court Opinion, 7/31/13, at 14. The trial court relied upon the following in support of its conclusion:

[The affiant] recited in detail "the facts and circumstances" that were within his knowledge that led him to request a warrant to search 413 N. Edgewood Street. The affidavit stated that of [Reese]'s eight arrests, six listed 413 N. Edgewood as his address. It also contained the assertion that one of the complainants had ascertained, through a cousin, that [Reese] was then currently residing in "West Philly" which was consistent with the 413 N. Edgewood address. In short, there were sufficient facts set forth in the affidavit of probable cause "to warrant a man of reasonable caution" to conclude that [Reese] resided at 413 N. Edgewood.

At the suppression hearing, Detective [Frank] Mullen's testimony corroborated the statements presented in the affidavit of probable cause as to the location of [Reese]'s residence. He testified that he reviewed [Reese]'s criminal history, prison release records, DMV records and "LexisNexis" as well as speaking with one of the victims. (N.T.[,] 10/02/12[, at] 10-15, 21) He testified that in six of [Reese]'s eight arrests 413 North Edgewood was listed as his address. Also[,] [Reese]'s records relating to his release from prison on April 27, 2011, six months prior to his arrest, listed his address as North Edgewood Street. On cross examination, Detective Mullen testified that at the time he conducted his search for [Reese]'s address he did not have access to the release records maintained by the Pennsylvania Board of Probation and Parole which indicated that [Reese] had been paroled to 5821 Belmar Terrace in the City of Philadelphia. ([*Id.* at] 19, 20, 25-15, 21)

It is not inconceivable that [Reese] would have two addresses. However, examining the "totality of the circumstances" the affidavit of probable cause contained sufficient facts to justify the search of the premises 413 N. Edgewood Street.

*Id.* at 14-15.

Our review of the record comports with the above summary provided by the trial court. Although the Department of Motor Vehicles had Reese's address listed as 5821 Belmar Terrace, the information available to the police suggested that it was more likely that he resided at the North Edgewood Street residence, particularly in light of the officers' reasonable belief that Reese was released from prison to the North Edgewood Street address. **See generally** N.T., 10/2/12, at 10-25. As stated above, probable cause requires "a fair probability," not absolute certainty, that the items or persons sought are located in the location to be searched. **Housman**, 986 A.2d at 843. As such, no relief is due.

Reese also raises a claim on appeal that the evidence was insufficient to support his convictions. Reese's Brief at 12-14. Specifically, Reese asserts that the victims' identifications of him lacked credibility as none of the victims who testified actually knew Reese prior to the robbery, and yet Harrison inexplicably identified him to the police by name, which resulted in the photo array containing Reese's picture. **Id.** at 13. Furthermore, Reese states that the details of the robbery differed with each victim, including the clothing worn by the perpetrator. **Id.** at 13-14.

As the trial court recognizes, these arguments challenge the weight of the evidence, not its sufficiency. Trial Court Opinion, 7/31/13, at 15-16; **see Commonwealth v. Melvin**, 103 A.3d 1, 43 (Pa. Super. 2014) ("An argument regarding the credibility of a witness'[] testimony goes to the

weight of the evidence, not the sufficiency of the evidence.");
***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa. Super. 2014)
("variances in testimony go to the credibility of the witnesses and not the
sufficiency of the evidence") (citations omitted). It is well-settled law that
an appellant must preserve a challenge to the weight of the evidence before
the trial court either at sentencing or in a post-sentence motion.
Pa.R.Crim.P. 607(A); ***Commonwealth v. Thompson***, 93 A.3d 478, 490
(Pa. Super. 2014). Reese failed to do so, and as such, this argument is
waived on appeal. ***See Thompson***, 93 A.3d at 491.

Although Reese raised no further issues for our review on appeal, we
nonetheless conclude that we must remand the case for resentencing, as
Reese's sentence is illegal. ***See Commonwealth v. Watley***, 81 A.3d 108,
118 (2013) (en banc) ("Legality of sentence questions are not waivable and
may be raised sua sponte by this Court."), *appeal denied*, 95 A.3d 277 (Pa.
2014). The record reflects that the trial court sentenced Reese to an
aggregate term of fifteen to thirty years of incarceration – two-and-a-half to
five years for possessing an instrument of crime; a consecutive term of two-
and-a-half to five years for conspiracy; two consecutive mandatory minimum
sentences of five to ten years for two of the robberies; and two concurrent
mandatory minimum sentences of five to ten years for the other two
robberies. N.T., 11/20/12, at 19-20. It was uncontested at sentencing that

Reese was subject to the mandatory minimum sentences pursuant to section 9712 of the Sentencing Code.[5] ***See id.*** at 5, 13.

---

[5] This section provides, in relevant part:

> **(a) Mandatory sentence.--**Except as provided under section 9716 (relating to two or more mandatory minimum sentences applicable), any person who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses), shall, if the person visibly possessed a firearm or a replica of a firearm, whether or not the firearm or replica was loaded or functional, that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary. Such persons shall not be eligible for parole, probation, work release or furlough.
>
> **(b) Proof at sentencing.**--Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.
>
> **(c) Authority of court in sentencing.**--There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsection (a) or to

Between the panel's original decision and reargument en banc, however, this Court in **Commonwealth v. Valentine**, 101 A.3d 801 (Pa. Super. 2014), found section 9712 unconstitutional based upon the United States Supreme Court's decision in **Alleyne v. U.S.**, ___ U.S. ___, 133 S.Ct. 2151 (2013), which held: "[F]acts that increase mandatory minimum sentences must be submitted to the jury." **Id.** at 2163. In **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (en banc), this Court en banc found that **Alleyne** applies retroactively to cases that were pending on direct appeal when the decision was handed down. **Id.** at 90. On this basis, we therefore vacate the judgment of sentence and remand for resentencing without consideration of the mandatory minimum sentencing provisions of section 9712.

Judgment of sentence vacated. Case remanded for resentencing in accordance with this Memorandum. Jurisdiction relinquished.

Judges Bowes, Shogan, Lazarus, Mundy, Olson, Stabile and Jenkins join the Memorandum.

Judge Wecht files a Concurring and Dissenting Memorandum.

---

place such offender on probation or to suspend sentence. Nothing in this section shall prevent the sentencing court from imposing a sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided in this section.

42 Pa.C.S.A. § 9712(a).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2015